UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREA RENGUETTE, Individually and as Mother, Natural Guardian, and Next Friend on behalf of J.R., a Minor, Plaintiffs, | ) ) ) ) ) ) | |
| vs. | ) ) | 1:05-cv-1548-SEB-JMS |
| THE BOARD OF SCHOOL TRUSTEES for and on behalf of the BROWNSBURG COMMUNITY SCHOOL CORPORATION, KATHLEEN E. CORBIN, JANET K. VIARS, RICHARD B. DOSS, LISA M. SMITH, JOAN M. STADER, JOHN McCLOUD, CONNIE S. HADLEY, D.A.V., a Minor, LAURA K. OGDEN, and STEVEN D. OGDEN, Defendants. | ) ) ) ) ) ) ) ) ) ) | |

**ENTRY GRANTING DEFENDANT STEVEN D. OGDEN'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Motion for Summary Judgment [Docket No. 66] filed by Defendant, Steven D. Ogden, on April 10, 2006. Plaintiff, Andrea Renguette, brings this suit individually and as mother, natural guardian, and next friend of J.R., a minor. The suit alleges that D.A.V., also a minor, sexually assaulted J.R. repeatedly while they were riding on the school bus. Ms. Renguette's suit asserts over fifty claims related to this alleged conduct, and names multiple defendants, including: the trustees of the school corporation; several individuals associated with the school; the minor, D.A.V.; D.A.V.'s mother, Laura Ogden; and D.A.V.'s stepfather, Steven Ogden.

Mr. Ogden is named as a defendant in only one count of the Complaint – Count LIX – which alleges that both he and Ms. Ogden are vicariously liable for the intentional torts allegedly committed by D.A.V., pursuant to the Indiana parental liability statute (Indiana Code § 34-31-4-1).  Mr. Ogden asserts that summary judgment should be granted in his favor because he is not D.A.V.'s "parent" and is thus not subject to liability under the statute.  Ms. Renguette rejoins that the proper interpretation of the statute as it applies to Mr. Ogden is a matter of first impression, and urges that we therefore certify the question to the Indiana Supreme Court.  For the reasons detailed in this entry, we decline to certify the question and <u>GRANT</u> Mr. Ogden's Motion for Summary Judgment.

### *Factual Background*

The facts of this case are disturbing, indeed, but we need not delve into them in great detail for purposes of ruling on the Motion before us.  In sum, Ms. Renguette alleges that, on forty-eight separate occasions during November and December 2003, J.R., who was at the time a twelve-year-old seventh-grader, was sexually abused by D.A.V., then a fourteen-year-old high school freshman, while both were riding the bus to school.  Ms. Renguette asserts that the school bus was equipped with a system of security cameras designed to allow the driver to ensure the safety of the student passengers, but that the bus driver kept the monitor turned off.  Compl. ¶¶ 46-60.

During November and December of 2003, Ms. Renguette noted a marked decline in J.R.'s mood and learned that J.R. had begun mutilating herself with knives.  <u>Id.</u> ¶ 62.  Ms. Renguette took her daughter to a mental health counselor, to whom J.R. reported that

she had been sexually molested and that she had been contemplating suicide. Id. ¶¶ 63-66. J.R. began a course of mental health treatment, and Ms. Renguette made an official complaint to Brownsburg school officials on January 5, 2004. In response to this complaint, Brownsburg school officials informed Ms. Renguette that J.R. was being immediately suspended from school for having sex on the school bus, and provided her with a written notice of an expulsion hearing.[1] As a result, J.R. suffered severe emotional distress and suicidal ideation, which led Ms. Renguette to take J.R. back to her mental health counselor, who subsequently arranged for her to be admitted to Valle Vista Hospital, a mental health care facility, where she remained for treatment for approximately two weeks. Id. ¶¶ 89, 93-95.

Ms. Renguette, individually and on behalf of J.R., brought this suit on October 17, 2005. The Complaint alleges a total of fifty-nine counts, and includes as defendants the Board of School Trustees for the Brownsburg Community School Corporation, several school officials, D.A.V., D.A.V.'s mother Laura Ogden, and D.A.V.'s stepfather Steven Ogden. The Complaint raises claims pursuant to the Fourteenth Amendment, several federal statutes, and numerous Indiana tort and constitutional allegations. Among these are forty-eight counts, each of which alleges the commission of an intentional tort of sexual assault and battery under Indiana common law by the minor defendant, D.A.V. Count LIX alleges that Laura Ogden and Steven Ogden are vicariously strictly liable in

---

[1] J.R. was eventually permitted to return to her regular classes. We are informed that D.A.V. was also immediately suspended from school, and was then placed in an in-school expulsion program. See School Defendants' Brief in Support of Motion for Summary Judgment [Docket No. 106] at 24.

damages for harms resulting from the intentional torts committed upon J.R. by D.A.V., based upon the Indiana parental liability statute, Indiana Code § 34-31-4-1.

## *Legal Analysis*

I.   **Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the

party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).

## II.     *The Indiana Parental Liability Statute*

Indiana Code § 34-31-4-1 provides in relevant part that:

[A] parent is liable for not more than five thousand dollars ($5,000) in actual damages arising from harm to a person or damage to property knowingly, intentionally, or recklessly caused by the parent's child if:

   (1)   the parent has custody of the child; and
   (2)   the child is living with the parent.

Mr. Ogden denies liability for any torts committed by D.A.V. because, he asserts, as a stepfather, he is neither D.A.V.'s parent nor does he have custody of him. Mr. Ogden is married to Ms. Ogden, who is D.A.V.'s natural mother and has physical custody of D.A.V. Def.'s Br. at 2. Mr. Ogden is not D.A.V.'s natural father, has not adopted D.A.V., and does not have (and never has had) legal custody of D.A.V. Odgen Aff. ¶¶ 5-7. Therefore, he claims, he is outside the coverage of the parental liability statute, and summary judgment should be entered in his favor.

Ms. Renguette rejoins that the scope and meaning of the statute as applied to someone in Mr. Ogden's position presents a matter of first impression in Indiana statutory

construction. Therefore, as we have previously noted, she requests that we certify the question to the Supreme Court of Indiana to determine whether Mr. Ogden is included under the statute. Ms. Renguette relies upon dicta by the Indiana Court of Appeals in Hyman v. Davies, 453 N.E.2d 336, 338 (1983), which states that "the purpose of [the Indiana parental liability] statute is to protect innocent victims from damage by irresponsible judgment proof minors. The responsibility for the damage caused by a minor is placed upon his parents, within certain limitations, *since it is the parents who have the duty of controlling and disciplining the behavior of their children*" (emphasis added). Ms. Renguette maintains that the purpose of the statute would best be served by holding that the statute applies so as to impose liability upon Mr. Ogden for the intentional torts committed by D.A.V.[2]

In support of her contentions, Ms. Renguette essentially argues that Mr. Ogden "walks like, talks like, looks like and acts as a parent," and thus should be treated as such under the statute. Pl.'s Resp. At 8. Specifically, she points to deposition testimony by Mr. Ogden which establishes, *inter alia*, that Mr. Ogden has been living with Ms. Ogden and D.A.V. since April 1992; that Mr. Ogden has been married to Ms. Ogden since May

---

[2] Ms. Renguette also relies upon an Indiana case which discusses the common law duty imposed on persons entrusted with children that they supervise their charges. See Davis v. LeCuyer, 849 N.E.2d 750, 757 (Ind. Ct. App. 2006). However, Ms. Renguette's citation from Davis is inapposite. Her cited language from that case concerns whether parties supervising a child were liable for negligent supervision *as a separate tort action*, not whether the parties (who were not the child's parents) were strictly liable for the torts of that child pursuant to the statute at issue here. Inasmuch as the Davis case is provided as a comparator, we are doubtful that the legislative policies underlying the common law and the parental liability statute are identical, and, in any event, because the language of the statute is unambiguous (as we shall explain), we shall not pursue such analysis.

1992; and that the Ogdens have a biological child, Paige, who lives with Mr. Ogden, Ms. Ogden, and D.A.V. all as a family unit.  Further, Mr. Ogden in many respects serves as "the substantial and functional equivalent of a natural parent *vis à vis* D.A.V.," (Pl.'s Resp. at 4), participating in supervision, discipline, financial support, transportation, and other "parental" responsibilities with respect to D.A.V.  Id. at 4-5, citing Steven Ogden dep. at 22-35.  Ms. Renguette maintains that an Indiana court would likely construe the parental liability statute to encompass a stepparent like Mr. Ogden, who "materially participates" in the upbringing of a minor child to such an extent as to be "effectively" a parent of that child.  Id. at 6.

The parental liability statute provides a statutory remedy in derogation of the common law, and thus must be strictly construed.  See Johnson v. Toth, 516 N.E.2d 85, 86 (Ind. Ct. App. 1987); Wells v. Hickman, 657 N.E.2d 172, 176 (Ind. Ct. App. 1995) (strictly construing the Indiana parental liability statute).  Neither the term "parent" nor the term "custody" is explicitly defined within the statute, so we must interpret the language of the statute according to its plain and ordinary meaning.  See Vanderburgh County Election Bd. v. Vanderburgh County Democratic Central Comm., 833 N.E.2d 508, 410 (Ind. Ct. App. 2005).  This "plain meaning" rule is very much ingrained in our jurisprudence: as the Supreme Court stated in Perrin v. United States, 444 U.S. 37, 42 (1979), "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  See

also Desert Palace, Inc. v. Costa, 539 U.S. 90, 98 (2003) ("[W]here . . . the words of the statute are unambiguous, the judicial inquiry is complete.").[3]

Under the plain and unambiguous meaning of the statute, Mr. Ogden is clearly not D.A.V.'s "parent" and does not have "custody" over him.  "The word 'parent,' used in its ordinary and usual sense, means one who begets or brings forth an offspring.  This denotes consanguinity rather than affinity."  Vallati v. Gniazdowski, 328 A.2d 431, 431 (Conn. Super. 1974) (concluding that the ordinary definition of "parent" excluded a stepfather).  See also In re Bishop, 36 F.2d 148, 149 (W.D. Wash. 1927) ("The legal acceptance of the term 'parent' does not include 'stepfather.'").[4]  Our construction of the term "custody" is just as clear: Mr. Ogden admittedly does not have legal custody over D.A.V.  See Wells, 657 N.E.2d at 176 (describing "custody" under the Indiana parental liability statute as "legal custody").[5]

---

[3] The parties devote some space in their pleadings to the discussion of other Indiana statutes (as well as the statutes of other states) in an attempt to guide our construction of the parental liability statute.  We need not analyze these other statutes, as the language of the parental liability statute is clear and unambiguous.  Thus, our analysis begins and ends on the face of the statute in question.

[4] Clearly, adoptive parents would also be considered "parents" under the statute.  See Indiana Code § 31-19-15-2(c) ("After the adoption, the adoptive father or mother . . . occup[ies] the same position toward the child that [he or she] would occupy if [he or she] were the biological father or mother").

[5] Though our analysis, confined to the plain language of the statute, ends here, we also note with interest the recent Indiana Court of Appeals opinion in C.M.L. ex rel. Brabant v. Republic Servs., Inc., 800 N.E.2d 200 (Ind. Ct. App. 2003), cited by neither party, in which very similar arguments were raised.  In that case, the Indiana Court of Appeals declined to extend the common law doctrine of parental immunity (to tort claims brought by a parent's child) to a stepparent, even though the stepparent had a "fatherly" relationship with the minor plaintiff.  The court held that, unlike a parent, a stepparent has no legal obligation to support his or her stepchildren, and that marriage to a child's parent does not in itself place the stepparent *in loco*
(continued...)

Were the Indiana General Assembly inclined to include a person such as Mr. Ogden (with reference to his relationship to D.A.V.) within the ambit of the parental liability statute, we are confident that it could quite capably and clearly have drafted the statute to indicate as much.  But since the Legislature did not do this, we cannot properly construe the statute as written to encompass someone who is "effectively" a parent or who assumes a "parental role" but who is *not* the child's parent and impose liability for that child's intentional torts under the statute.  It is clear that, "where the words of [a] statute are clear and free from ambiguity, the letter of the statute may not be disregarded under the pretext of pursuing its spirit." Com v. Firman, 813 A.2d 643, 649 (Pa. 2002).

Because Mr. Ogden is not D.A.V.'s "parent" and does not have "custody" over him, we hold that the Indiana parental liability statute does not apply to him and, accordingly, he is not liable for any intentional torts committed by D.A.V.  Therefore, Mr. Ogden's Motion for Summary Judgment is GRANTED.  IT IS SO ORDERED.

Date:  02/28/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

---

[5](...continued)
*parentis* to that child.  Moreover, the fact that a stepparent voluntarily assumed responsibilities in caring for a child, without adopting the child, was not enough to afford him parental immunity: "a stepparent may voluntarily assume the obligations of a parent; but, in order to benefit from the parental immunity doctrine, a stepparent must take the formal step of becoming invested with the rights and charged with the duties of a parent." Id. at 207 (internal quotation marks omitted).

Sylvia Abra Bier
LOCKE REYNOLDS LLP
sbier@locke.com

Marsha Volk Bugalla
LOCKE REYNOLDS LLP
mbugalla@locke.com

Betty Marie Conklin
WILLIAM O. HARRINGTON, P.C.
bettyharringtonlaw@ameritech.net

Charles Christian Douglas
THE HUNT CORPORATION
cdouglas@thehuntcorp.com

Ralph E. Dowling
THE DOWLING LAW OFFICE
justicemanrd@comcast.net

William O. Harrington
harringtonlaw@ameritech.net

Robert L. Hartley Jr.
LOCKE REYNOLDS LLP
rhartley@locke.com

Robert Arthur Hutchens
HUTCHENS & YOUNG LLP
hutchensroberta@sbcglobal.net

Jason A. Shartzer

THE LAW OFFICES OF BUDDY YOSHA
jshartzer@yoshalaw.com

Thomas E. Wheeler II
LOCKE REYNOLDS LLP
twheeler@locke.com