UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ANDREA RENGUETTE, Individually and | ) | |
| as Mother, Natural Guardian, and Next | ) | |
| Friend on behalf of J.R., a Minor, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1548-SEB-JMS |
| | ) | |
| THE BOARD OF SCHOOL TRUSTEES | ) | |
| for and on behalf of the BROWNSBURG | ) | |
| COMMUNITY SCHOOL | ) | |
| CORPORATION, et al., | ) | |
| Defendants. | ) | |

**ENTRY GRANTING SCHOOL DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

This cause comes before the Court on the Motion for Summary Judgment [Docket

No. 98] filed by the Board of School Trustees for and on behalf of the Brownsburg

Community School Corporation ("the School"), as well as seven named officials and

employees of the School (collectively, "the School Defendants").[1]  Plaintiff Andrea

---

[1] Originally, each School Defendant filed a separate summary judgment motion, all of
which were jointly addressed by a consolidated brief in support of all eight filed motions.  For
docket management and case administration purposes, we consolidated these eight motions into
a single motion seeking summary judgment on behalf of all School Defendants, on which we
now rule.  See Docket Management Order (August 31, 2007).

In addition to the Board of School Trustees, the individually named School Defendants
and their positions during the relevant timeframe are as follows: Kathleen E. Corbin,
Superintendent of Schools, and Janet K. Viars, Assistant Superintendent of Schools, Brownsburg
Community School Corporation; Richard B. Doss, Principal, Lisa M. Smith, Assistant Principal,
and Joan M. Stader, Guidance Counselor, Brownsburg Junior High School; and John McCloud,
Director, and Connie S. Hadley, Bus Driver, Brownsburg Community School Corporation

(continued...)

Renguette filed suit individually and on behalf of her minor daughter, J.R., alleging that

D.A.V., also a minor, sexually assaulted J.R. on numerous occasions while they were

riding on the school bus.  Ms. Renguette's suit asserts fifty-nine claims related to this

alleged conduct, pursuant to numerous federal civil rights statutes, Indiana law, and the

United States and Indiana Constitutions.  The School Defendants are named in fifty-eight

of these counts, and here seek summary judgment as to each of them.  For the reasons

detailed in this entry, we GRANT School Defendants' motion in its entirety.

## Factual Background[2]

We have discussed the facts underlying this dispute at some length in our prior

entries in this cause [Docket Nos. 159, 194] and reiterate them here to the extent that they

are relevant to the issues now before the Court.  In the fall of 2003, J.R. was a seventh-

grader at Brownsburg Junior High School, and was assigned to ride Bus #35 to school.

D.A.V. was a ninth-grader at Brownsburg High School, and also rode Bus #35.  Corbin

---

[1](...continued)
Transportation Department.

[2] We note from the outset that Plaintiffs have failed to comply with Federal Rule of Civil
Procedure 56, which requires plaintiffs to "set out specific facts showing a genuine issue for
trial."  In their response, Plaintiffs set forth *no* specific facts or evidence.  Rather, they simply
note that "certain issues . . . are patently in dispute in this litigation" (Pls.' Resp. at 3) – including
whether Defendants had knowledge or intent related to various matters, as well as issues such as
whether J.R. "could consent to sex," whether her "conduct was voluntary," and whether she
"could have welcomed D.A.V.'s advances[.]" Id. at 4.  As Defendants rightly state, "a series of
unsupported allegations is insufficient to show disputed material facts that can defeat [a] motion
for summary judgment."  Defs.' Reply at 3.  Because Plaintiffs have not controverted with
specific evidence *any* of Defendants' factual averments, we accept Defendants' statements as
true.  See Waldridge v. Amer. Hoechst Corp., 24 F.3d 914 (7th Cir. 1994).

Aff. ¶¶ 18, 19.

Brownsburg Community School Corporation bus drivers were required to assign seats to the students being transported on the school bus in order to minimize discipline problems and assist drivers in accounting for students; however, drivers were granted discretion as to what specific seating assignments were made.  Hadley Aff. ¶ 16.  Connie Hadley, the driver of Bus #35, generally required elementary school students to sit toward the front of the bus, and assigned older students to sit toward the back.  She allowed students to select specific seats during the first few days of school and then developed a seating chart based on these preferences, while retaining discretion to reassign a student if necessary.  Id. ¶ 17.

Ms. Renguette alleges in her Complaint (but, notably, does not support with evidence for purposes of the present motion) that the school bus was equipped with a system of security cameras designed to allow the driver to ensure the safety of the student passengers, but that Ms. Hadley kept the monitor turned off.  Compl. ¶¶ 49, 52, 55. Defendant John McCloud, Director of Transportation for Brownsburg Community School Corporation, testified in his affidavit that Bus #35 was, indeed, equipped with a four-camera digital video recording ("DVR") system; however, the DVR recorder was located in a locked cabinet at the back of the bus.  The bus was *not* equipped with a video monitor from which recordings could be viewed.  In order to view the recordings, it would be necessary to unlock the cabinet, remove a removable hard drive, and install the hard drive onto a specially equipped computer, which was kept in the office of the Director of

Transportation.  Mr. McCloud testified that the video equipment was not intended to

supervise activity on the bus; rather, its purpose was to create a record to which resort

could be had in the event of an incident which could give rise to a dispute (e.g., an

accident).  McCloud Aff. ¶¶ 18-27.

At some point during the fall semester, J.R. asked Ms. Hadley if she could move

seats in order to sit next to D.A.V.  Ms. Hadley granted J.R.'s request as neither of the

students had previously misbehaved to Ms. Hadley's knowledge.  Ms. Hadley stated in

her affidavit that she believes D.A.V. and J.R. sat together on the right side of the bus,

approximately five or six rows from the back.  Id. ¶ 24.

According to the Complaint, during November and December of 2003, Ms.

Renguette noted a marked decline in J.R.'s mood and discovered that J.R. had begun

mutilating herself with knives.  Compl. ¶ 62.  On December 19, 2003, Ms. Renguette took

her daughter to a mental health counselor, to whom J.R. allegedly reported that she had

been sexually molested and that she had been contemplating suicide.  The counselor

subsequently recommended psychiatric evaluation and therapy for J.R.  Id. ¶¶ 63-66, 69.

On January 5, 2004, the first day of school after the winter break, Ms. Renguette

visited the school and informed Ms. Stader, a guidance counselor, that she had learned

about sexual conduct taking place between her daughter and D.A.V. on Bus #35.[3]  Ms.

_____

[3] The parties characterize the sexual conduct in very different terms.  School Defendants
describe Ms. Renguette's "report[]" that "J.R. and D.A.V. had been engaging in sexual activity"
on the bus.  Stader Aff. ¶ 16; Defs.' Mem. at 20.  Ms. Renguette, however, refers to "multiple
and repeated acts of sexual touching, fondling, vaginal penetration, molestation, deviate sexual
(continued...)

Stader consulted with Ms. Smith, the assistant principal, who requested that Ms. Renguette submit a written complaint. Stader Aff. ¶ 16, Smith Aff. ¶ 16. The School Defendants attest that none of them had any knowledge of the activity on the bus before this complaint was made. Defs.' Mem. at 21 (citing affidavits).

The following day, Ms. Smith met with J.R. in order to further investigate Ms. Renguette's complaint. In the meeting, J.R. informed Ms. Smith that she knew why she had been called to Ms. Smith's office, and admitted that sexual activity between her and D.A.V. had occurred on the school bus. Smith Aff. ¶¶ 22-25. J.R. also gave Ms. Smith the name of another student whom J.R. believed had knowledge of the conduct; Ms. Smith spoke with this student, who in turn disclosed another name of a potential witness to the conduct, and Ms. Smith spoke with this student as well. Id. ¶ 26.

Brownsburg school policy prohibits sexual activity on school property, and provides that a student may be expelled for such an offense. Smith Ex. 4; Corbin Aff. ¶ 24. Ms. Smith, in conjunction with Mr. Doss, the Junior High Principal, determined that J.R. should be expelled, and immediately suspended her pending an expulsion hearing. Doss Aff. ¶ 18. Ms. Smith notified J.R. and Ms. Renguette of J.R.'s suspension pending expulsion immediately following her interview on January 6, 2004. Smith Aff. ¶ 27. The

---

[3](...continued)
conduct, public indecency, abuse and sexual harassment which her twelve (12) year old daughter, J.R., had suffered at the hands of the older high school student, [D.A.V.]." Compl. ¶ 75.

principal of Brownsburg High School initiated similar disciplinary action for D.A.V.[4]

Corbin Aff. ¶ 28.  Both principals made such recommendations to Superintendent Corbin,

who appointed Assistant Superintendent Viars as Hearing Examiner for both cases.  Id. ¶¶

28-29.

According to the Complaint, on January 11, 2004, a Sunday afternoon, the School

dispatched a uniformed police officer to J.R.'s home, who personally served upon her

written notice that an expulsion hearing was to take place the next day.  Compl. ¶ 89.  The

Complaint asserts that "as a direct, proximate and immediate result" of her suspension

and her encounter with the police officer informing her of the expulsion hearing, J.R.

"suffered shock, immediate and severe emotional distress and the exacerbation of her pre-

existing emotional injury and/or disabling medical condition."  Id.  ¶ 93.

The next day, Ms. Renguette took J.R. to Cummins Mental Health Center, where

"it was determined that J.R. was probably suffering a major depressive episode with

suicidal ideation" and that she was planning to commit suicide rather than endure the

expulsion hearing, in addition to the "severe emotional distress" she was already suffering

as a result of the previously occurring sexual acts.  Id. ¶ 94.  J.R. was admitted

immediately to Valle Vista Hospital, a mental health facility, where she remained until

January 24, 2004; her expulsion hearing was postponed during this time.  For several

weeks during and after J.R.'s hospitalization, her teachers provided Ms. Renguette with

---

[4] In fact, on January 13, 2004, the expulsion hearing for D.A.V. was held.  D.A.V. was ordered to undergo counseling and perform twenty hours of community service, and was required to spend the rest of the school year in an in-school expulsion program.  Viars Ex. 3.

J.R.'s school assignments, so she could stay up to date with her school work.  Smith Aff. ¶ 34.

On January 30, 2004, J.R.'s expulsion hearing was held.  J.R. was represented by counsel.  According to the written record of the hearing, Ms. Smith described the situation and recommended expulsion through the second semester of the 2003-2004 school year.  J.R. testified that she had engaged in sexual activity as reported.  Counsel for J.R. requested that the school evaluate J.R. for a disability, and Ms. Renguette requested an evaluation for Special Education following the suspension.  Viars Ex. 8.

Upon the conclusion of the hearing, the Hearing Examiner found that J.R. had committed misconduct that violated the Brownsburg Junior High School Student Handbook, and was an expellable offense under school policy and Indiana law.  The Hearing Examiner ordered J.R. to undergo counseling and perform twenty hours of community service; upon the completion of both conditions, she was to be permitted to return to school.[5]  Upon her return, J.R. would initially be placed in the In School Suspension Program to become oriented back into the system; Ms. Stader and Ms. Smith were to determine when J.R. would be able to return to her normal classes.  J.R. was also prohibited from riding the school bus through the conclusion of the semester.  Id.

On February 25, 2004, J.R.'s doctor signed a release permitting J.R. to return to school; she returned the following day and commenced her regular seventh-grade

---

[5] However, on February 17, 2004, Ms. Viars altered the disciplinary terms such that J.R. could return to school prior to completion of the twenty hours of community service.  Viars Ex. 9.

classes.[6]  On the day of her return, the school psychologist began an evaluation to determine if J.R. was eligible for Special Education.  J.R. completed the remainder of the school year in her regular classes and was promoted to the eighth grade.[7]  Smith Aff. ¶¶ 41-43.

On March 25, 2004, a case conference was held (which Ms. Renguette and J.R. attended) regarding J.R.'s eligibility for Special Education.  Corbin Aff. ¶ 39, Corbin Ex. 1.  The determination reached was that J.R. was *not* eligible for such services and should remain in general classes.  Ms. Renguette signed a parent permission form indicating her agreement with this outcome.  Corbin Aff. ¶ 39, Corbin Ex. 1.  No other request for evaluation of J.R. was ever received by the School after this date (nor had any been received prior to January 19, 2004).  Corbin Aff. ¶¶ 32-34, 39.

## Legal Analysis[8]

---

[6] From the record, it does not appear that J.R. was placed in the In School Suspension program upon her return to school.

[7] The following school year, J.R. transferred to Cardinal Ritter High School.  Corbin Aff. ¶ 40.

[8] Plaintiffs devote substantial space in their brief to a discussion of whether the sexual conduct that occurred between J.R. and D.A.V. was (or could legally have been) consensual. Plaintiffs cite our prior entry in which we held that summary judgment for Laura Ogden – D.A.V.'s mother – was not available, because we could not conclude, "based on uncontroverted evidence or as a matter of law, that the sexual conduct . . . was consensual."  May 23, 2007 Entry at 12-13.  (Plaintiffs' claims against D.A.V. and Laura Ogden have since been settled subject to probate court approval.  See Docket No. 238.)  Plaintiffs continue with a discussion of the positions of the Indiana Supreme Court and the Indiana Legislature regarding the age of sexual consent.

Plaintiffs fail to explain (and we do not ourselves find) the relevance of this explication
(continued...)

## I.      Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Disputes concerning material facts are genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material

fact exist, the court construes all facts in a light most favorable to the non-moving party

and draws all reasonable inferences in favor of the non-moving party. See id. at 255.

However, neither the "mere existence of some alleged factual dispute between the

parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the

material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of

Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears

---

[8](...continued)
to the matters at bar. Whether the sexual conduct between D.A.V. and J.R. was voluntary has no
bearing on the liability, if any, of the School Defendants with regard to the fifty-eight claims
disputed in the instant motion. Therefore, the reason for Plaintiffs' inclusion of this material in
their responsive brief is unclear.

the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.    Count I: Title IX

Count I of the Complaint asserts a violation of Title IX, 20 U.S.C. § 1681(a), which provides that "no person . . . shall, on the basis of sex, be excluded from

participation in, denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance."[9]  A recipient of

federal funds may be liable under Title IX for student-to-student sexual harassment if a

school is "deliberately indifferent to sexual harassment, of which they have actual

knowledge, that is so severe, pervasive, and objectively offensive that it can be said to

deprive the victims of access to the educational opportunities or benefits provided by the

school."  Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 650 (1999).  See also

Gabrielle M. v. Park Forest-Chicago Heights, Ill. Schl. Dist. 163, 315 F.3d 817, 823-24

(7th Cir. 2003) (emphasizing that: "[A]ctual – not constructive – notice is the appropriate

standard in peer harassment cases. . . . Courts, therefore, have focused on reports or

observations in the record of inappropriate behavior to determine when school officials

had actual notice.").

    In addition, despite Plaintiffs' protestations to the contrary, it is well-established

under binding Seventh Circuit authority that Title IX prohibits discriminatory acts by

recipients of federal funds *only* – not individuals.  See Smith v. Metropolitan School Dist.

Perry Tp., 128 F.3d 1014, 1019-20 (7th Cir. 1997); Hendrichsen v. Ball State Univ., 107

Fed. Appx. 680, 684 (7th Cir. 2004); Torrespico v. Columbia Coll., 1998 WL 703450, at

*16 (N.D. Ill. 1998).  Therefore, the Title IX claims brought against the individually

named Defendants fail as a matter of law.

_____

    [9] Brownsburg Community School Corporation is a recipient of federal funding.  Corbin
Aff. ¶ 3.  No other School Defendant was a recipient of federal funding during the relevant
timeframe.  Defs.' Mem. at 19 (citing affidavits).

As to Plaintiffs' Title IX claim against the School Board – the sole institutional Defendant against whom a Title IX claim may properly be brought – Plaintiffs cannot surmount summary judgment because they have introduced no evidence demonstrating actual knowledge of the purported harassment.[10]  Rather than asserting any specific facts suggesting actual knowledge, Plaintiffs summarily state that "issues of knowledge . . . predominate in this case as disputed issues of material fact" (Pls.' Resp. at 12), dismiss the School Defendants' affidavits as "self-serving and conclusory" (id. at 11), and further opine that "it is virtually inconceivable that the school bus driver did not know, or should not have know, of [the conduct], or should not have at least suspected it." (Id.)

These assertions wholly fail to create disputes of material fact sufficient to foreclose summary judgment, and misstate the requirement that a defendant have *actual knowledge* of the peer-to-peer harassment.[11]  Further, Defendants' affidavits are based on personal knowledge and are therefore admissible evidence, and as Plaintiffs introduce no evidence to the contrary, no dispute of material fact is established based on Plaintiffs' rhetoric.  See Celotex, 477 U.S. at 322.  Accordingly, we GRANT summary judgment as to Count I, Plaintiffs' Title IX claim.

---

[10] Because we so hold, we need not address whether the purported harassment was sufficiently severe and pervasive as to deprive J.R. of educational opportunities.

[11] Further, once the School had actual knowledge of the conduct – not during the weeks that the sexual conduct allegedly occurred, but following Ms. Renguette's complaint – they were required to respond to such harassment in a reasonable manner.  Leach v. Evansville-Vanderburgh School Corp., 2000 WL 33309376, at *7 (S.D. Ind. 2000).  Plaintiffs have not disputed that the school acted reasonably in its disciplinary decisions.

**III.     Counts II – V: Rehabilitation Act, ADA, § 1983, and Constitutional Claims**

In Counts II and III of the Complaint, Plaintiffs allege that Defendants

discriminated against J.R. on the basis of a disability, in violation of Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12132.  Counts IV and V assert violations of J.R.'s constitutional

rights based on the United States Constitution and 42 U.S.C. § 1983.  Defendants assert

that these claims are barred because part of the relief Plaintiffs seek pursuant to these

statutes could be available as a remedy pursuant to the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., and Plaintiffs did not exhaust their

remedies pursuant to the IDEA.[12]

The text of the IDEA establishes that the administrative remedies available therein

must be exhausted prior to asserting Rehabilitation Act, ADA, or constitutional claims

which seek relief that would also be available under the IDEA:

---

[12] Plaintiffs' response to this assertion evinces a misunderstanding of Defendants' argument.  Plaintiffs assert that Defendants "[set] up an unplead claim under [the] IDEA as a strawman to knock-down" even though Plaintiffs made no mention of it in the Complaint. Pls.' Resp. at 9.  Plaintiffs go on to state that "it is not for the School Defendants to assert an IDEA claim against themselves on behalf of the Plaintiffs so that they could then defeat the IDEA claim not made by invoking the doctrine of exhaustion and in the process inflict collateral damage on Plaintiffs' other claims by applying doctrines and defenses applicable in the first instance only to the IDEA claim never asserted by the Plaintiffs." Id. at 9-10.  This confusingly worded argument demonstrates only that Plaintiffs misinterpret Defendants' accurate argument: exhaustion under the IDEA is not a "strawman" argument, but rather a necessary prerequisite to claims like those brought by Plaintiffs here.  Plaintiffs' assertion that they have not themselves invoked the IDEA is precisely the point, and Plaintiffs do not contest that they have not exhausted their administrative remedies under the statute (as Ms. Renguette never appealed the determination that J.R. was not eligible for special education services).

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l); see also McCormick v. Waukegan Schl. Dist. #60, 374 F.3d 564, 567 (7th Cir. 2004).[13]  Therefore, "any pupil who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute." Charlie F. v. Bd. of Educ. of Skokie Schl. Dist. 68, 98 F.3d 989, 991 (7th Cir. 1996) (in response to § 1983 claim).

The IDEA does not explicitly provide for compensatory money damages as a remedy.  See id.  However, certain types of relief sought by Plaintiffs – including transportation expenses and counseling fees and costs for J.R. (see Compl. at 99) – may be available as "in-kind" services upon a showing of disability under the IDEA.  See 20 U.S.C. § 1401(26)(A).  In Charlie F., Judge Easterbrook reasoned that when some of the monetary relief sought was for services that might be available in-kind pursuant to IDEA, administrative remedies under the IDEA must first be exhausted.  Charlie F., 98 F.3d at 992 ("Why do Charlie's parents want money?  Presumably at least in part to pay for services (such as counseling) that will . . . promote his progress in school.  Damages

---

[13] We note that, under certain circumstances, a plaintiff may not need to first exhaust administrative remedies under IDEA upon a showing that such pursuit would be futile.  See McCormick, 374 F.3d at 569.  No such argument or showing has been made in this case.

could be measured by the cost of these services.  Yet the school district may be able

(indeed, may be obliged) to provide these services in kind under the IDEA. . . . [Thus]

pursuit of the administrative process would be justified.  Charlie would not get the kind of

relief the complaint demands, but this is not what § 1415(f) says.  We read 'relief

available' to mean relief for the events, condition, or consequences of which the person

complains, not necessarily relief of the kind the person prefers.").  Accordingly, we hold

that because Plaintiffs did not exhaust their administrative remedies pursuant to the IDEA

prior to bringing claims under the Rehabilitation Act, ADA, § 1983, and the United States

Constitution, Defendants' Motion for Summary Judgment is <u>GRANTED</u> as to Counts II-

V of the Complaint.[14]

## IV.    Counts VI – LVIII: State Law Claims

As Defendants correctly note, upon disposition of all federal claims, a federal court

has the discretion to dismiss pendent state law claims without prejudice.  <u>See</u> 28 U.S.C. §

1367(c)(3).  However, where, as here, substantial judicial resources have already been

---

[14] Because we so hold, we need not address Defendants' alternative arguments for summary judgment as to each of these claims.  We note, however, the dearth of evidence in the record which might demonstrate an intent to discriminate, deliberate indifference to J.R.'s needs, or deprivation of J.R.'s constitutional rights.

We also need not address in detail the additional preemption arguments raised by Defendants, for, as we have stated, failure to exhaust under the IDEA preempts each of these four claims.  However, we note Defendants' alternative arguments that Count V, the claim premised on the U.S. Constitution, is faulty because § 1983 provides the proper vehicle for private actions related to alleged violations of a constitutional right (Defs.' Mem. at 43-44), as well as their argument that the asserted violation of Title IX (Count I) precludes a separate action under § 1983.  <u>See</u> <u>Waid v. Merrill Area Public Schools</u>, 91 F.3d 857, 863 (7th Cir. 1996) ("Congress closed the avenue created by § 1983 to all plaintiffs who could follow the way created by Title IX.").

committed to the adjudication of such claims, and where the correct disposition of such

claims is clear as a matter of state law, we may retain jurisdiction over such claims in

order to promote judicial efficiency.  See Miller Aviation v. Milwaukee County Bd. of

Supervisors, 273 F.3d 722, 731-32 (7th Cir. 2001); Brazinski v. Amoco Petroleum

Additives Co., 6 F.3d 1176, 1182 (7th Cir. 1993).  We opt to do so here.

Counts VI through LVIII of the Complaint assert myriad state claims against the

School Defendants.  Specifically, Counts VI through LII (forty-eight counts in all) each

alleges a separate occurrence of sexual assault and battery and seeks damages against (for

purposes of this motion)[15] the School and Defendants Hadley, McCloud, and Corbin.

Count LIV asserts a state claim of intentional infliction of emotion distress against all

School Defendants.  Count LV alleges wrongful suspension, expulsion, and discipline and

abuse of process against the School and Defendants Stader, Smith, Doss, Viars, and

Corbin.  Count LVI alleges wrongful hiring, retention, and supervision as to the School

and Defendants Hadley, McCloud, and Corbin.  Count LVII asserts a violation of Indiana

Public Policy as to all School Defendants.  Finally, Count LVIII asserts violations of the

due course of law and privileges and immunities clauses (Art. 1 §§ 1, 23) of the Indiana

Constitution as to all School Defendants.

---

[15] Each of these counts of the Complaint also seeks damages against D.A.V. for the alleged torts, but these claims are not the subject of the present motion (and, as we have previously stated, have been reportedly settled).

16

**A.**     *Applicability of the Indiana Tort Claims Act to Claims against Individual*
           *Defendants*

As an initial matter, we address an argument repeatedly raised by the individual

School Defendants in response to the various state claims at issue.  Defendants assert that

the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-1 et seq., bars such claims

against the individual School Defendants.  The ITCA establishes "limitations on the

judicially decreed rights to sue and recover from governmental entities and their

employees . . . [as well as] extensive immunity provisions which shield governmental

units from tort liability[.]"  Benton v. City of Oakland City, 721 N.E.2d 224, 232 (Ind.

1999).  The question of immunity is one of law to be determined by the court, and the

burden of establishing immunity falls upon the party seeking it.  Mangold v. Ind. Dep't of

Natural Res., 756 N.E.2d 970, 975 (Ind. 2001); see also Hochstetler v. Elkhart County

Highway Dep't, 868 N.E.2d 425, 426 (Ind. 2007).

Ind. Code § 34-13-3-5(b) provides in relevant part:

> A lawsuit alleging that an employee acted within the scope of the employee's
> employment bars an action by the claimant against the employee personally.
> However, if the governmental entity answers that the employee acted outside
> the scope of the employee's employment, the plaintiff may amend the
> complaint and sue the employee personally.

See also Bushong v. Williamson, 790 N.E.2d 467, 472 (Ind. 2003) ("The purpose

of immunity is to ensure that public employees can exercise their independent judgment

necessary to carry out their duties without threat of harassment by litigation or threats of

litigation over decisions made within the scope of their employment.") (quoting

17

Celebration Fireworks, Inc. v. Smith, 727 N.E.2d 450, 452 (Ind. 2000)).  The School

asserts that none of the individually named School Defendants acted outside the scope of

their employment with respect to any of the conduct at issue in this case.  Plaintiffs

neither contest this assertion nor adduce any evidence to the contrary.  Accordingly, the

ITCA bars Plaintiffs' state tort claims against all individual Defendants.

### B.      Remaining State Claims

In addition, School Defendants devote approximately twenty pages of their brief to

raising numerous, detailed, and well-considered arguments – some procedurally based,

and some as to the insufficiency of the evidence – as to all of the fifty-two state law

claims alleged.  In response, Plaintiffs have provided merely a single, confusingly worded

paragraph addressing "state law claims" generally, which is entirely devoid of legal

reasoning or citation, does not address any specific evidence, and fails to directly respond

to any of Defendants' arguments.

In order to defeat a motion for summary judgment, Rule 56(e)(2) requires that a

nonmovant must set forth specific affirmative facts in opposition which demonstrate a

genuine issue for trial.  See Aetna Cas. & Sur. Co. v. Neff, 30 F. Supp. 2d 990, 993 (S.D.

Ohio 1998); Liberty Lobby, 277 U.S. at 257.  Moreover, a "nonmovant must be able to

articulate a legal argument precluding summary judgment on the record before the court."

11 MOORE'S FEDERAL PRACTICE § 56.13[4] (Matthew Bender 3d ed.).  Here, Plaintiffs

have made a wholly insufficient showing as to both the facts and legal argument

regarding these claims.  Accordingly, they have not discharged their burden, and summary judgment is therefore mandated as to these claims as well.  See Celotex, 477 U.S. at 322.

## V.      Conclusion

For the reasons we have stated, School Defendants' Motion for Summary Judgment is GRANTED in its entirety.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.


Date: ____03/31/2008_____

Copies to:

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Marsha Volk Bugalla
LOCKE REYNOLDS LLP
mbugalla@locke.com

Charles Christian Douglas
THE HUNT CORPORATION
cdouglas@thehuntcorp.com

Ralph E. Dowling
THE DOWLING LAW OFFICE
justicemanrd@comcast.net

Betty Marie Harrington
WILLIAM O. HARRINGTON, P.C.
betty@harringtonlaw.us

William O. Harrington
HARRINGTON LAW, P.C.
bill@harringtonlaw.us

Robert Arthur Hutchens
HUTCHENS & YOUNG LLP
hutchens_robert@yahoo.com

Jason A. Shartzer
THE LAW OFFICES OF BUDDY YOSHA
jshartzer@yoshalaw.com

Thomas E. Wheeler II
LOCKE REYNOLDS LLP
twheeler@locke.com